**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**BYRON L. CONWAY, ADC #113285**                                    **PLAINTIFF**

**V.**                                **No. 5:10CV00225 JLH-BD**

**MOSES JACKSON, III,** *et al.*                                       **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.**      **Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge J. Leon Holmes. Any party may file written objections to this recommendation.

Objections must be specific and must include the factual or legal basis for the objection. To object, specifically identify any finding of fact you believe to be wrong and describe the evidence that supports your objection.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If you do not object to the Recommendation, Judge Holmes can adopt it without reviewing all of the evidence. By not objecting, you may also waive any right to appeal questions of fact.

    Mail your objections and "Statement of Necessity" to:

        Clerk, United States District Court
        Eastern District of Arkansas
        600 West Capitol Avenue, Suite A149
        Little Rock, AR 72201-3325

**II.**    **Introduction:**

On August 3, 2010, Plaintiff Byron L. Conway, an inmate at the Arkansas Department of Correction ("ADC"), filed a complaint under 42 U.S.C. § 1983. (Docket entry #2) Based upon the number of unrelated claims raised in the complaint, the Court ordered Mr. Conway to file an amended complaint. (#3) On August 16, 2010, Mr. Conway filed his amended complaint (#8), which more thoroughly explained his claims and their relationship to each other. The Court has dismissed several Defendants as well as several of Mr. Conway's claims. (#36, #74, #93, #112)

The remaining Defendants – Moses Jackson, III, Harrison Foreman, Clarence Kelley[1], and Todd Ball ("Defendants") – have moved for summary judgment, claiming that Mr. Conway's remaining claims against them for excessive force and failure to protect should be dismissed with prejudice. (#116) Mr. Conway has responded to the motion, and Defendants have filed a reply. (#121, #123)

Based upon the evidence presented, the Court recommends that the Defendants' motion for summary judgment (#116) be GRANTED.

---

[1] The correct spelling of Defendant's last name is "Kelley," not "Kelly" as identified in the Complaint.

**III.    Discussion:**

    A.     Summary Judgment Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).  Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party must go beyond the pleadings and, by depositions, affidavits or otherwise, designate "specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) (internal citation omitted) ("The nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.")

If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted.  See *Celotex*, 477 U.S. at 322.

B.  Factual Background

Mr. Conway's claims against Defendants stem from a meeting that he had with Dr. Peter Edwards on April 20, 2010.[2] Mr. Conway testified that he did not know that he was going to meet with Dr. Edwards. (#104-2 at p.4) He explained that once he arrived at Dr. Edwards's office, Dr. Edwards immediately began questioning him about a lawsuit that he had previously filed against Dr. Edwards. This angered Mr. Conway. (#104-2 at pp.5 and 8) Mr. Conway testified that Dr. Edwards then asked him whether he was feeling homicidal or suicidal. He stated that he was feeling homicidal, although he admitted that he was feeling better. (#104-2 at p.6)

The day after Mr. Conway met with Dr. Edwards, he woke up very angry. (#117-1 at p.4) Around 12:30 p.m., Mr. Conway asked Corporal Doyle if he could speak with someone from mental health. (#117-1 at pp.4-5) When no one responded to his request, Mr. Conway tore his bed sheet and tied a piece of it around his neck. (#117-1 at p.5) He testified at his deposition that he was deranged and not thinking clearly. (#117-1 at p.5) Although Mr. Conway stated that he intended to attempt suicide, he could not find a place to hang himself. (#117-1 at p.6) So he put a cup in the toilet and flooded his cell, "to try to get somebody to come help." (#117-1 at p.5)

---

[2]Mr. Conway's claims against Dr. Edwards were dismissed with prejudice after the court granted Dr. Edwards's motion for summary judgment. (#112)

At around 2:00 p.m., Corporal Scott saw water coming from Mr. Conway's cell. (#117-1 at p.8)  He gave Mr. Conway multiple direct orders to stop flushing his toilet and to stop flooding his cell.  Mr. Conway did not comply.  Corporal Scott left to turn off the water to Mr. Conway's cell and then returned to the cell with Sergeant Foreman.  Both Corporal Scott and Defendant Foreman ordered Mr. Conway to "catch the cuffs" so that they could restrain him and remove him from his cell.  But Mr. Conway refused and cursed at the officers.  (#117-1 at p.9)  Mr. Conway told Sergeant Foreman that one of two things was going to happen – either he was going to kill one of the "blue suits" or they were going to kill him.  (#8 at p. 8)

Corporal Scott and Defendant Foreman then left Mr. Conway's cell, but returned a short time later with Captain Jackson.  (#117-1 at p.9-10)  Defendant Jackson ordered Mr. Conway to "catch the cuffs," but Mr. Conway refused and began yelling and screaming at him, too.  (#117-1 at p.9)  Captain Jackson then told Major Kelley about Mr. Conway's refusal to submit to being restrained.  (#117-3 at p.2)  Defendant Kelley gave Defendant Jackson permission to perform a cell extraction and to use force to remove Mr. Conway from his cell.  (#117-3 at p.2)

Defendant Jackson returned to Mr. Conway's cell with the Emergency Response Team ("Team"), which consisted of Defendant Jackson, Defendant Foreman, Officer Miller, Officer Doyle, Officer Minor, and Officers Smith and Clinkscale.  Defendant Foreman used a video camera to record the extraction.  (#117-3 at p.2, and #8)

When the team arrived at Mr. Conway's cell, Captain Jackson again instructed Mr. Conway several times to submit to being restrained and warned him that if he did not comply, force would be used. (#117-3 at p. 2) Mr. Conway did not comply with the order and began cursing at the officers. (#117-3 at p. 2) Defendant Jackson disbursed a one-second burst of chemical agent into Mr. Conway's cell. (#117-3 at p.2) After being sprayed, Mr. Conway turned around and placed his back to the door so that officers could place restraints on his hands. (#117-3 at p.4) Mr. Conway then tripped on the bed sheet strip and fell to the floor. (#117-1 at p.12, #117-3 at p.4, #8 at p. 10) The Team then entered the cell, placed restraints on Mr. Conway's legs, and then picked him up off the floor and carried him out of his cell. (#117-1 at p. 13, #117-3 at p.4) Upon leaving the cell, Captain Jackson removed the sheet from around Mr. Conway's neck. (#117-1 at p.14)

Mr. Conway was escorted to isolation and was placed in the shower. (#117-1 at p.15) Once he was in the shower, all of Mr. Conway's restraints were removed, and Defendant Jackson instructed Mr. Conway how to wash the chemical agent from his eyes. (#117-1 at p.15) After the water was turned off, the nurse examined Mr. Conway, including his neck and skin. (#117-1 at p.16) Mr. Conway was then escorted into a single-man cell in isolation. (#117-1 at p.17) At 4:40 p.m. a mental health counselor placed Mr. Conway on treatment precautions. (#117-1 at p.20, #117-3 at p.4)

Mr. Conway claims Captain Jackson used excessive force during the extraction process. He also claims that the other Defendants failed to protect him during his extraction from his cell. The undisputed evidence does not support Mr. Conway's claims.

C.  Excessive Force

Officers do not violate the Eighth Amendment when they use force reasonably "in a good-faith effort to maintain or restore discipline" but may not apply force "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); see also *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006). Factors to consider in deciding whether a particular use of force was reasonable include whether there was an objective need for force, the relationship between the need and the degree of force used, the threat reasonably perceived by the correctional officers, efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. *Hudson*, 503 U.S. at 7; see also *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008).

Here, Mr. Conway claims that Defendant Jackson used excessive force when he sprayed the one-second burst of chemical agent into the cell and when he removed the strip of bed sheet from around Mr. Conway's neck. (#8 at pp.9-12, 32) The undisputed evidence shows Mr. Conway claimed to be suicidal when Defendant Jackson encountered him. In fact, Mr. Conway had tied a strip of his bed sheet around his neck with the apparent intention of killing himself. When Defendant Jackson gave Mr. Conway multiple direct orders to come to the door to be restrained so that he could be removed

from his cell, Mr. Conway refused and shouted obscenities at Defendant Jackson. Defendant Jackson warned Mr. Conway that continued refusal to be restrained would result in the use of force, but Mr. Conway refused to come to the door to be cuffed. After Mr. Conway was carried out of his cell by the Team, Defendant Jackson quickly removed the piece of bed sheet from Mr. Conway's neck to prevent Mr. Conway from hurting himself.

Mr. Conway was immediately taken to the shower, where he was allowed to wash off the chemical agent. A nurse was present and examined Mr. Conway after he had showered. At that time, Mr. Conway did not complain of anything related to his skin but did tell the nurse that his neck was hurting. (#122 at p.11) The report from the nurse's examination indicates that she saw minimal edema and redness to Mr. Conway's eyes. His lungs were clear, and there were no marks on Mr. Conway's body. She did note a "very thin, very faint brown discoloration around the neck." (#122 at p. 15)

On April 30, 2010, another nurse examined Mr. Conway after he complained of chemical burns to his face, his right side, and right arm. The nurse did not see any irritation to the right side of his trunk, but noted a small, dark, flat circular area on his right side and a dry darker chapped area on the right side of his face. (#122 at p. 15) Mr. Conway was given topical antibiotic ointment for the area on his face. (#122 at p. 15)

After reviewing the *Hudson* factors, the Court concludes that a one-second spray of chemical agent was not excessive force under the circumstances. Mr. Conway was

admittedly angry and out of control. He told officers repeatedly that he was suicidal and was walking around his cell with a strip of bed sheet tied around his neck. He threatened and shouted obscenities at the officers.

Defendant Jackson gave Mr. Conway direct orders, which Mr. Conway ignored. Defendant Jackson warned Mr. Conway that force would be used if he did not comply with orders to be restrained, and Mr. Conway refused to comply. It was only after warning Mr. Conway that force would be used that Defendant Jackson used a minimal amount of non-deadly force.³ See *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) (pepper spray may be used if "the inmate's noncompliance . . . poses a threat to other persons or to prison security"); see also *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (holding that "a limited application of capstun to control a recalcitrant inmate constitutes a tempered response by prison officials when compared to other forms of force").

In this case, after reviewing the exhibits (including the video of Mr. Conway's extraction, which Defendants attached to their reply (#123)), it is clear that Defendant Jackson's use of a one-second spray of a chemical agent was reasonably necessary to extract Mr. Conway from his cell and to prevent him from hurting himself.

---

³Arkansas Department of Correction Administrative Directive 09-17 permits use of non-deadly force to protect any person from reasonably foreseeable injury. (#117-9)

Additionally, Defendant Jackson's removal of the strip of bed-sheet from Mr. Conway's neck was also reasonable. The strip of bed-sheet was removed very quickly in order to prevent Mr. Conway from further injuring himself. Defendant Jackson's actions were reasonable under the circumstances and resulted in no more than a slight discoloration around Mr. Conway's neck. (#122 at p. 14)

Based on the undisputed facts and the videotape of Mr. Conway's extraction, the Court concludes that no reasonable juror could find in favor of the Mr. Conway on his excessive force claim against Defendant Jackson. Accordingly, Defendant Jackson's motion for summary judgment should be granted. See *Scott v. Harris*, 550 U.S. 372, 381 (2007) (holding summary judgment is appropriate in an excessive force case when, based upon a videotape of the incident, no reasonable jury could rule in favor of the plaintiff); *Wallingford v. Olson*, 592 F.3d 888, 892–93 (8th Cir. 2010) (same).

D.  Failure to Protect

Claims of failure to protect are governed by a "deliberate indifference" standard. "[D]eliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Ambrose v. Young*, 474 F.3d 1070, 1076 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970 (1994). The duty to protect requires only that prison officials take reasonable

measures to abate substantial risks of serious harm, of which they are aware. *Farmer*, 511 U.S. at 847.

Here, Mr. Conway alleges that Defendants Foreman, Kelley, and Ball failed to protect him because they knew that he could be harmed by the use of force and the removal of the bed sheet from his neck, but did nothing to ensure his safety. He claims this created a substantial risk of serious harm and constituted a conscious disregard for his health and safety. (#8 at pp. 9-12) Mr. Conway also claims that Defendant Jackson failed to ensure his safety when did not direct officers to remove the bed sheet from his neck before they picked him up off the floor of his cell. (#8 at p. 10)

Defendant Foreman was a member of the Team that extracted Mr. Conway from his cell. He held the video camera throughout the process and recorded the extraction. (#8 at p. 9) Mr. Conway alleges that Defendant Kelly knew that he was in danger of choking to death from the chemical agent being sprayed in his cell while the bed sheet was still around his neck, but "failed to act," thus subjecting him to physical harm. (#8 at p. 9) Mr. Conway alleges that Defendant Ball failed to protect him by giving Defendant Jackson permission to spray him with a chemical agent.

As set forth above, under the circumstances it was not unreasonable for Defendant Jackson to use a chemical agent to get Mr. Conway to come to the door to be restrained so that officers could remove him from his cell when he was out-of-control and suicidal. In

fact, it arguably would have been unreasonable for Defendants to fail to remove Mr. Conway from his cell under these circumstances.

Further, it did not subject Mr. Conway to a substantial risk of harm for Defendant Jackson to remove the strip of bed sheet from around Mr. Conway's neck after he was carried from his cell as opposed to before he was removed. The video of the incident reveals that it was only a matter of moments from the time he was picked up off the floor to the time the sheet was removed, and during that time, officers took care not to step or pull on the sheet.

Finally, in his amended complaint Mr. Conway claims that Defendant Ball failed to protect him by authorizing Defendant Jackson to use a chemical agent to extract him from his cell. (#8 at p. 12)  The undisputed facts reveal, however, that it was actually Defendant Kelley who authorized the use of the chemical agent on Mr. Conway.  (#117-1 at p.18, #117-3 at p.2)  Accordingly, Mr. Conway has failed to come forward with any facts to support a failure-to-protect claim against Defendant Ball.

Based on the undisputed facts and the videotape of Mr. Conway's extraction, the Court concludes that no reasonable juror could find in favor of Mr. Conway on his failure to protect claim.  Thus, Defendants are entitled to summary judgment.  See *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Wallingford v. Olson*, 592 F.3d 888, 892–93 (8th Cir. 2010).

## IV.     Conclusion:

The Court recommends that Defendants Moses Jackson, III, Harrison Foreman, Clarence Kelley, and Todd Ball's motion for summary judgment (#116) be granted and that Mr. Conway's complaint and amended complaint be dismissed, with prejudice.

DATED this 20th day of December, 2011.

_____
UNITED STATES MAGISTRATE JUDGE